UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

**TRONICK D. MASSEY,**

    Plaintiff,

    v.                                         Case No. 20-CV-962

**PETER J. JAEGER,**

    Defendant.

## DECISION AND ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Plaintiff Tronick D. Massey, a Wisconsin state prisoner who is representing himself, filed this lawsuit under 42 U.S.C. § 1983. He challenges a prison policy, under which he had to wait an hour before seeing a nurse for medical treatment. The defendant moves for summary judgment on the grounds that Massey failed to exhaust his administrative remedies. Massey opposes the motion. For the reasons explained below, I will grant the defendant's motion for summary judgment and dismiss this case.

### FACTS

The facts in this section are taken from Massey's complaint (ECF No. 1) and the defendant's proposed findings of fact and declaration in support of the motion for summary judgment. (ECF Nos. 18–19.) Massey submitted a joint motion for summary judgment and response to the defendant's motion, a second brief in response to the defendant's motion, and several exhibits in support. (ECF Nos. 21–

24.) Because Massey did not respond to the defendant's facts as required under Civil L. R. 56(b)(2)(B), I will deem those facts admitted for purposes of this decision. *See* Civil L. R. 56(b)(4); *Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003) ("We have consistently held that a failure to respond by the nonmovant as mandated by the local rules results in an admission."). I will consider the proposed facts only to the extent they are supported by evidence in the record and will consider arguments in the supporting memoranda only to the extent they properly refer to the proposed facts. *See* Fed. R. Civ. Pro. 56(c)(1); Civil L. R. 56(b)(1)(C)(i) and (b)(6).

Massey is an inmate at Prairie du Chien Correctional Institution ("PDCI"), where he was transferred from the Kenosha County Jail on April 26, 2019. (ECF No. 1 at 3.) He alleges that his transport to PDCI lasted four-and-a-half hours, during which he rode in a metal van and injured his scrotum. (*Id.*) Once at PDCI Massey asked a correctional officer for medical treatment, and the officer told him he would call the nurse. (*Id.*) Other officers took Massey to a holding cell and told him he had to shower before seeing the nurse. (*Id.*) Massey complied, but the officers still refused to allow him to see a nurse. (*Id.*) Massey asked a third time for medical treatment, and he finally was taken to see a nurse—over an hour after he had originally requested treatment. (*Id.*) Massey alleges he had to wait to see a nurse because of a policy at PDCI, which he seeks to change through this lawsuit. (*Id.* at 4.)

On February 4, 2020, the Institution Complaint Examiner ("ICE") office received a complaint from Massey about his transport on April 26, 2019, and the injury he suffered. (ECF No. 18, ¶ 2; ECF No. 19-2 at 8.) Massey signed the complaint

three days earlier. (ECF No. 19-2 at 8.) On February 10, 2020, an ICE rejected Massey's complaint as untimely because he submitted it more than fourteen days after the date of the incident and gave no good cause to excuse the late filing. (ECF No. 18, ¶ 3; ECF No. 19-2 at 2.) Massey appealed the rejection of his complaint to the warden. (ECF No. 18, ¶ 4; ECF No. 19-2 at 4, 9.) On March 4, 2020, the warden approved the rejection of Massey's complaint. (ECF No. 18, ¶ 4; ECF No. 19-2 at 5.)

The next day, March 5, 2020, the ICE office received a second complaint from Massey complaining about the wait he endured before receiving medical treatment on April 26, 2019. (ECF No. 18, ¶ 5; ECF No. 19-3 at 6.) He stated in the complaint that he spoke with "staff" about the wait and was told "it's policy and they couldn't do anything about it." (ECF No. 19-3 at 6.) On March 9, 2020, an ICE rejected Massey's second complaint as untimely because, like the first complaint, he submitted it more than fourteen days after the date of the incident and gave no good cause to excuse the late filing. (ECF No. 18, ¶ 6; ECF No. 19-3 at 2.) Massey did not appeal the rejection of his second complaint. (ECF No. 18, ¶ 7; ECF No. 19-3 at 5.) On June 26, 2020, he brought this lawsuit under § 1983. (ECF No. 1.)

## SUMMARY JUDGMENT STANDARD

A party is entitled to summary judgment if it shows that there is no genuine dispute as to any material fact and it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Material facts" are those that "might affect the outcome of the suit." *See Anderson*,

477 U.S. at 248. A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id.*

To survive a motion for summary judgment, a non-moving party must show that sufficient evidence exists to allow a jury to return a verdict in its favor. *Brummett v. Sinclair Broad. Grp., Inc.*, 414 F.3d 686, 692 (7th Cir. 2005). Summary judgment is proper "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

## ANALYSIS

Under the Prison Litigation Reform Act ("PLRA"), an inmate cannot bring a cause of action under federal law "until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); *see Woodford v. Ngo*, 548 U.S. 81, 93 (2006). Exhaustion requires that an inmate comply with the rules applicable to the grievance process at the inmate's institution. *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). This requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

The Court of Appeals for the Seventh Circuit applies a "strict compliance approach to exhaustion," *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006), and expects inmates to adhere to "the specific procedures and deadlines established by the prison's policy," *King v. McCarty*, 781 F.3d 889, 893 (7th Cir. 2015) (citing *Woodford*, 548 U.S. at 93). "Substantial compliance with administrative remedies"

4

does not satisfy the PLRA, *Farina v. Anglin*, 418 F. App'x 539, 543 (7th Cir. 2011) (citing *Booth v. Churner*, 532 U.S. 731, 739 (2001), and *Dole*, 438 F.3d at 809); and there is no "futility exception" to exhaustion under the PLRA, *Perez v. Wisconsin Dep't of Corr.*, 182 F.3d 532, 537 (7th Cir. 1999) (citing *Greene v. Meese*, 875 F.2d 639, 641 (7th Cir. 1989)); *see Booth*, 532 U.S. at 741. But a prisoner is not required to exhaust administrative remedies if those remedies are not "available." *Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006). Because exhaustion is an affirmative defense, the defendants bear the burden of proving that Massey failed to exhaust. *See Pavey v. Conley*, 544 F.3d 739, 740–41 (7th Cir. 2008) (citing *Jones v. Bock*, 549 U.S. 199, 216 (2007)).

Wisconsin has established an Inmate Complaint Review System to allow inmates to file complaints about policies, rules, living conditions, and staff actions at their institutions. Wis. Admin. Code § DOC 310.06. Inmates must exhaust all administrative remedies that the Department of Corrections has promulgated by rule before commencing a civil action against an officer, employee, or agent of the DOC. *Id.* § DOC 310.05. An inmate must file a complaint with the ICE within fourteen calendar days of the incident underlying the complaint. *Id.* § DOC 310.07(2). An ICE has discretion to accept a late complaint for good cause. *Id.* If the complaint is filed beyond the fourteen-day deadline, the inmate must request to file it late and provide the reason for the late filing. *Id.* The ICE may accept, return, or reject the complaint. *Id.* § DOC 310.10(2). If the ICE accepts the complaint, she must assign a file number and classification code to the complaint and provide notice to the inmate that the complaint was received. *Id.* § DOC 310.10(3)–(4). The inmate must appeal any

5

adverse decision within fourteen days of the ICE's decision and await a final decision from the Office of the DOC Secretary. *Id.* §§ DOC 310.12 & 310.13.

The undisputed evidence shows that on February 4, 2020, the ICE office received Massey's first inmate complaint. This complaint did not address the wait he endured before seeing the nurse and addressed only the injury he suffered from the ride in the van on April 26, 2019. Not only did Massey submit this complaint more than nine months after the incident without providing good cause to excuse the late filing, but it did not contest the policy he challenges in this lawsuit. Even if it were timely, this inmate complaint would not have exhausted Massey's administrative remedies for his claim challenging the PDCI policy with which he takes issue. Massey's second complaint, in which he contests the policy he challenges in this lawsuit, was received on March 5, 2020. This complaint was filed even later than the first one, and Massey failed to appeal the rejection of his complaint and instead brought this lawsuit three months later.

Massey concedes in his response to the defendant's motion that he "may not have properly exhausted Administrative Remedies." (ECF No. 21 at 3.) He asserts that he "was told by Staff that an I.C.E would do nothing" and that he had to first discuss his issue with staff before filing a complaint. (*Id.*) Massey states he spoke with unspecified staff, who told him "that it is policy and they would not be able to do anything about it so an ICE would do nothing." (*Id.*) Massey asserts he "became disinvalid" after listening to staff and did not file an inmate complaint until another inmate told him he "should file one any way no matte[r] how late I am." (*Id.* at 3; ECF

6

No. 24 at 1.) He states he "became disinvalid again" when his second complaint was rejected," so he did not appeal because he believed "that it would do nothing." (*Id.*)

Massey's assertions do not save his complaint from dismissal. Under Wisconsin law, Massey needed to file an inmate complaint challenging the policy at PDCI with which he disagreed "within 14 days after the occurrence giving rise to the complaint." Wis. Admin. Code §§ DOC 310.06(1), 310.07(2). He failed to comply with that requirement. For that reason alone, Massey failed to exhaust his administrative remedies. *See Pozo*, 286 F.3d at 1023 ("[U]nless the prisoner completes the administrative process by following the rules the state has established for that process, exhaustion has not occurred.").

Massey alleges he waited ten months to challenge the nurse policy because "staff" told him filing an inmate complaint would not change the policy. He changed his mind only after another inmate told him he should file the complaint anyway. Wisconsin law allows inmates to submit late complaints, which may be accepted for good cause. Wis. Admin. Code § DOC 310.07(2). But Massey did not ask the ICE to excuse his second complaint's tardiness because of what PDCI staff told him. He merely stated that he had spoken with staff—which is a prerequisite for submitting an inmate complaint, Wis. Admin. Code § DOC 310.07(1)—and they told him "they couldn't do anything about" the policy. (ECF No. 19-3 at 6; ECF No. 19-3 at 2 ("Inmate Massey makes no plea for good cause.").) The time to seek permission to proceed on his late inmate complaint was in that grievance, not in his filings before this court. *See Hoeft v. Wisher*, 181 F. App'x 549, 550–51 (7th Cir. 2006) (citing *McCoy v. Gilbert*,

7

270 F.3d 503, 510–11 (7th Cir. 2001)) ("A prisoner's failure to take advantage of a procedure for reconsidering untimely filings constitutes a failure to exhaust.").

Even if Massey had proffered an excuse for his late inmate complaint, and even if PDCI staff's misdirection provided good cause to excuse his late filing, Massey has another problem. Massey eventually filed a complaint contesting the nursing policy, and the ICE rejected the complaint. Wisconsin law required Massey to appeal the rejection of his inmate complaint to exhaust his remedies. Wis. Admin. Code §§ DOC 310.12 & 310.13. Massey did not appeal, and he does not allege staff misinformation caused him not to. He simply gave up because he felt the appeal "would do nothing." But inmates are required to exhaust administrative remedies at their prison even if they believe the challenge will be futile. *See Thornton v. Snyder*, 428 F.3d 690, 694 (7th Cir. 2005) ("An inmate's perception that exhaustion would be futile does not excuse him from the exhaustion requirement."); *Perez*, 182 F.3d at 536–37 ("No one can *know* whether administrative requests will be futile; the only way to find out is to try."). Massey did not try, and his failure to "take a timely administrative appeal within the state system means that he has failed to exhaust his state remedies for purposes of § 1997e(a)." *Burrell v. Powers*, 431 F.3d 282, 285 (7th Cir. 2005) (citing *Pozo*, 286 F.3d at 1025, and *Dixon v. Page*, 291 F.3d 485, 490 (7th Cir. 2002)).

For all these reasons, Massey failed to exhaust his administrative remedies before bringing this lawsuit under § 1983. I therefore lack the discretion to resolve his claims on the merits, *see Perez*, 182 F.3d at 535, and must dismiss the complaint

8

without prejudice, *Ford v. Johnson*, 362 F.3d 395, 401 (7th Cir. 2004) (explaining that "*all* dismissals under § 1997e(a) should be without prejudice").

## ORDER

**IT IS THEREFORE ORDERED** that the defendant's motion for summary judgment on exhaustion grounds (ECF No. 16) is **GRANTED**.

**IT IS FURTHER ORDERED** that Massey's motion for summary judgment (ECF No. 21) is **DENIED**.

This case is **DISMISSED** without prejudice. The clerk's office shall enter judgment accordingly.

This order and the judgment to follow are final. A dissatisfied party may appeal my decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within **30 days** of the entry of judgment. *See* Federal Rule of Appellate Procedure 3, 4. This court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. *See* Federal Rule of Appellate Procedure 4(a)(5)(A).

Under limited circumstances, a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **28 days** of the entry of judgment. I cannot extend this deadline. *See* Federal Rule of Civil Procedure 6(b)(2). Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time,

generally no more than one year after the entry of the judgment. I cannot extend this deadline. *See* Federal Rule of Civil Procedure 6(b)(2).

A party is expected to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.

Dated in Milwaukee, Wisconsin, this 17th day of December, 2020.

BY THE COURT:

*Nancy Joseph*

NANCY JOSEPH<br>
United States Magistrate Judge